UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES                                    CRIMINAL ACTION

VERSUS                                                  NO. 13-101

CHRISTOPHER WHITE                         SECTION "R" (3)

## ORDER AND REASONS

Before the Court is defendant Christopher White's motion to vacate his convictions and sentence under 28 U.S.C. § 2255.[1] The Government opposes the motion.[2] For the following reasons, the Court denies the motion.

## I.    BACKGROUND

Defendant Christopher White worked as an accountant for several companies owned and operated by codefendant Mark Morad.[3] According to the factual basis that White signed, he agreed and conspired with others to fraudulently bill Medicare for home-health services and durable medical equipment that were either not medically necessary or not provided.[4] He

---

[1]    R. Doc. 848; *see also* R. Doc. 1108.
[2]    R. Doc. 867; *see also* R. Doc. 1109.
[3]    R. Doc. 265 at 2.
[4]    *Id.* at 3.

provided financial and accounting services to aid in the payment of money to patient recruiters, who in turn provided Medicare numbers of Medicare beneficiaries.[5]  The factual basis indicates that White and his co-conspirators caused Morad's companies to submit claims to Medicare totaling approximately $2,272,241.96.[6]

The factual basis further states that, after receiving a grand jury subpoena, White and his co-conspirators fabricated tax and employment records to mislead the grand jury and conceal the scheme.[7]  White told law-enforcement officials that, after Morad received the subpoena, he told White to prepare IRS Form 1099s for patient recruiter, Demetrias Temple and others, dating back to December 2009.[8]  The forms did not exist, so White used past bank statements and check records to prepare the 1099s, and submitted them to the IRS.[9]  The record also indicates that White and his co-conspirators fabricated and backdated employment applications, falsely indicating that Demetrias Temple was a contractor of one of Morad's companies, and an employee of another of his companies.[10]  For the purposes

---

[5]     *Id.*
[6]     *Id.* at 4.
[7]     *Id.* at 4.
[8]     R. Doc. 1108-1 at 2, 4.
[9]     *Id.*
[10]    Evidentiary Hearing, Testimony of Demetrias Temple (Dec. 13, 2021); *see also* R. Docs. 1109-1, 1109-2 & 1109-3.

of the present motion, White does not dispute that he prepared the backdated 1099s, but contends that he was not aware of, and did not participate in, the preparation of the false employment records.[11]

On September 25, 2014, the Government charged Christopher White with three counts in a second superseding indictment.[12]  On March 18, 2015, White pleaded guilty to one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to falsify records in a federal investigation, in violation of 18 U.S.C. § 371.[13]  In the plea agreement signed by White, his attorney, and the Government, the Government agreed to dismiss all other counts against White in the second superseding indictment, and not to bring any further charges in the Eastern District of Louisiana arising from White's conduct as detailed in the factual basis.[14]

On December 21, 2015, White moved to withdraw his guilty plea.[15] The Court ordered that, because it had already accepted White's guilty plea at his rearraignment, White must show that there was a fair and just reason

---

[11]    Evidentiary Hearing, Testimony of Christopher White (Dec. 13, 2021).
[12]    R. Doc. 114.
[13]    R. Doc. 261; R. Doc. 700-2; R. Doc. 707.
[14]    R. Doc. 264.
[15]    R. Doc. 513.

for requesting the withdrawal.[16]  In a supplemental memorandum, White argued that, "while he did engage in the preparation of tax forms at the request of the conspirators in this case, he did not personally have any nefarious intent and did so in his professional role as an accountant for the businesses owned and operated by Mr. Morad."[17]  On April 20, 2016, the Court denied White's motion because, among other reasons, White's assertion of innocence was inconsistent with the factual basis.[18]  On May 3, 2016, White's attorney, John Craft, moved to withdraw as counsel.

On June 24, 2016, White's newly appointed counsel filed an amended motion to withdraw his guilty plea, reiterating his claims of innocence, and arguing that his guilty plea was not knowing and voluntary because he did not receive effective assistance of counsel.[19]  White alleged that he became concerned about his guilty plea upon reading his presentence report, and met with John Craft twice in June of 2015, three months after the rearraignment, to discuss his concerns.[20]  White further contended that his guilty plea was not knowing and voluntary because he received ineffective assistance of

---

[16]     R. Doc. 558.
[17]     R. Doc. 568 at 4.
[18]     R. Doc. 600.
[19]     R. Doc. 649-1 at 9-15.
[20]     *Id.* at 8.

4

counsel from John Craft.  He stated that Craft's performance fell below an objective standard of reasonableness in multiple ways:

- Craft did not investigate the validity of the prosecution's allegations, and he did not investigate any potential defenses.

- Craft did not interview any witnesses.

- Craft did not conduct any pretrial discovery.

- Craft did not provide White with the discovery materials that Craft received, including pre-indictment interviews of Mr. White which he asserts are "an erroneous account of the interview[s]."

- Craft did not question White about his business and the accounting services he provided, nor did he ask for copies of documents to support White's defenses.

- Craft did not research the applicable IRS rules.

- Craft did not inform White of the applicable law, including the legal elements of conspiracy to commit healthcare fraud.

- Craft did not inform White of the applicable law concerning conspiracy to falsify records.[21]

White requested an evidentiary hearing on his motion to withdraw his guilty plea, and attached an affidavit signed by John Craft (the "Craft Affidavit"), which states, in full, "I, John H. Craft, have reviewed the foregoing memorandum, and agree with its contents.  If called to testify, I

---

[21]    *Id.* at 14.

would testify consistently with the statements contained in the memorandum."[22]

On September 16, 2016, the Court denied White's amended motion.[23] On October 5, 2016, the Court sentenced White to a term of imprisonment of 48 months as to each count, to be served concurrently.[24] The Court also included as part of White's sentence a three-year term of supervised release to follow his term of imprisonment.[25] The Fifth Circuit affirmed the judgment.[26]

On November 22, 2017, White moved to vacate his convictions and sentence under 28 U.S.C. § 2255, based on a claim of ineffective assistance of counsel.[27] He reasserts the deficiencies alleged in his amended motion to withdraw his guilty plea, and states new allegations against Craft involving White's plea agreement and rearraignment. White alleges for the first time in his § 2255 motion that Craft failed to explain the plea agreement to White, advised him to sign the plea agreement without ever discussing it with him, and failed to ask him whether he understood what he had signed.[28] White also

---

[22]   R. Doc. 649-7.
[23]   R. Doc. 696.
[24]   R. Doc. 707.
[25]   *Id.*
[26]   R. Doc. 826.
[27]   R. Doc. 848.
[28]   R. Doc. 848 at 19-20.

alleges that Craft did not review the factual basis or plea agreement with him on the morning of his rearraignment.[29]  Finally, White represents that, during his rearraignment, after the Court questioned him about his understanding of the charges, and the adequacy of counsel's representation, Craft whispered in his ear to "take one for the team."[30]  White had previously asserted that this comment occurred after the Court questioned him about any coercion by the prosecution.[31]  White argues that, but for Craft's deficiencies, White would have proceeded to trial.[32]  White also submits his own declaration in support of his § 2255 motion,[33] and reattaches the Craft Affidavit,[34] originally attached to the amended motion to withdraw the guilty plea.

On May 29, 2018, the Court denied White's § 2255 motion, and denied his request for an evidentiary hearing, finding that the record conclusively showed that White was not entitled to relief.[35]  White moved under Federal Rules of Civil Procedure 59(e) and 52(b) for the Court to alter or amend its

---

[29]   *Id.* at 20.
[30]   *Id.*
[31]   R. Doc. 649-1 at 11-12.
[32]   R. Doc. 848 at 21.
[33]   *Id.* at 41.
[34]   *Id.* at 65.
[35]   R. Doc. 889.

judgment denying his § 2255 motion.[36] The Court denied defendant's motion.[37]

On October 25, 2019, White appealed to the Fifth Circuit. On appeal, the Government argued that the Craft Affidavit, which broadly admitted the allegations in White's amended motion to withdraw his guilty plea, indicated that the record did not "conclusively show" that White was "entitled to no relief," and that the Court thus erred in denying White an evidentiary hearing. The Fifth Circuit concurred with the Government's position, writing that Craft's "admissions indicate the potential merit of White's claim, and that the record, therefore, does not conclusively show [that] White is not entitled to relief."[38] The Fifth Circuit remanded the case to this Court for an evidentiary hearing so that White could have "the opportunity . . . to prove his counsel's ineffectiveness under *Strickland*."[39]

White completed his prison sentence on January 3, 2019.[40] On June 10, 2021, on unopposed motion by White,[41] the Court granted early

---

[36] R. Doc. 898.

[37] R. Doc. 958.

[38] *United States v. White*, 840 F. App'x 798 (5th Cir. 2021) (per curiam).

[39] *Id.*

[40] R. Doc. 1058.

[41] *Id.*; R. Doc. 1061 at 2.

8

termination of White's supervised release.[42]    White continues to pay restitution based on his convictions.[43]

On December 13, 2021, pursuant to the Fifth Circuit's order, the Court held an evidentiary hearing on White's *Strickland* claim.[44]    The Court reviewed pre-hearing memoranda from both the Government and the defendant,[45] and heard testimony at the hearing from five witnesses: (i) John Craft, the attorney whose allegedly ineffective counsel is the subject of White's motion; (ii) Louis Irvin, White's counsel before John Craft; (iii) Cherish van Mullem, a tax-law expert; (iv) Christopher White, the defendant; and (v) Demetrias Temple, White's codefendant and convicted co-conspirator.

The Court considers the evidence and the parties' arguments below.

## II.    LEGAL STANDARD

On a § 2255 petition alleging ineffective assistance of counsel, the petitioner bears the burden of proof.    *See Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000).    To establish a claim of constitutionally ineffective

---

[42]    R. Doc. 1070.
[43]    R. Doc. 1108 at 1.
[44]    *See* R. Doc. 1083.
[45]    *See* R. Docs. 1108 & 1109.

assistance of counsel, a petitioner must show both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). On the first prong, the Court applies a highly deferential standard to the examination of counsel's performance. *See id.* On the second, or prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to establish either deficient performance, or actual prejudice, the Court may dispose of the claim without addressing the other prong. *See id.* at 697.

In the context of a guilty plea, a petitioner raising a *Strickland* claim must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. *See Hill v. Lockhart*, 474 U.S. 52 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Under the first prong of the *Strickland* test, if a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of

competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotations omitted). To meet the prejudice prong, a petitioner must establish that, but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Id.* at 59; *see also Armstead*, 37 F.3d at 206 (citing *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)). Furthermore, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

## III.   DISCUSSION

### A.   Deficient Performance of Counsel

The Court finds that White has failed to meet his burden on either prong of his *Strickland* claim. First, White has not shown that his counsel's performance fell below an objective standard of reasonableness. As the Court explained in its initial ruling on White's § 2255 motion, White's allegations regarding Craft's deficient counsel at the plea stage are inconsistent with White's statements made under oath at his rearraignment. At his rearraignment, White affirmed that he had read his plea agreement,

gone over it with his lawyer, understood its terms, and signed it.[46]   White also affirmed to the Court that he had read the factual basis detailing the conduct underlying the charged offenses; that he had reviewed the factual basis with his lawyer, and signed it; and that the statements in the factual basis were true.[47]   White further affirmed that he had had sufficient time to discuss his case with his lawyer, and that he was satisfied with the advice and services of his lawyer.[48]   Similarly, John Craft affirmed in open court that he had explained the charges to White; that he was satisfied that White understood what he was charged with; that he had a full opportunity to investigate the facts and law applicable to the case, as well as any possible defenses; that he had sufficient time to advise White on these matters; and that he was satisfied that White was pleading guilty knowingly and voluntarily.[49]   These statements, which were made in open court, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

To rebut this presumption, White points to the Craft Affidavit, in which his plea counsel, John Craft, purportedly concedes that he was deficient in the ways identified in White's amended motion to withdraw his guilty plea.

---

[46]   *See* R. Doc. 533 at 13-14.

[47]   *Id.* at 29.

[48]   *Id.* at 25.

[49]   *Id.* at 25-26.

The Craft Affidavit is the sole reason for this rehearing on White's § 2255 motion. The Fifth Circuit held that, because of the Craft Affidavit, the record did not "conclusively show" that White was not entitled to relief, 28 U.S.C. § 2255(b), and that, therefore, White was entitled to an evidentiary hearing on his *Strickland* claim. This Court therefore held an evidentiary hearing specifically to address Craft's appraisal of, and admissions regarding, his performance as White's plea counsel, as well as the prejudice caused by any proven deficiency. Having now heard testimony from Craft, White, and three other witnesses, the Court finds that the testimony heard not only fails to rebut the presumptive truth of White's and Craft's statements at White's rearraignment, but indeed further undermines White's contentions regarding Craft's deficient performance at the plea stage.

At the evidentiary hearing, Craft testified about his representation of White in this case. Craft testified that, while he has lapses in memory resulting from a head injury in 2017, he recalls that he attended multiple meetings with White and the Government, and reviewed many documents, including tax forms, employment records, and witness interviews.[50] He further testified that he made sure that the elements of the crimes charged were satisfied, and that he believed that the best course of action for White

---

[50]     Evidentiary Hearing, Testimony of John Craft (Dec. 13, 2021).

would be to plead guilty.[51]  As to Craft's statements at White's rearraignment, Craft testified that he was confident that he did not lie to the Court regarding his representation of White.[52]  He also testified that he never instructed White, before or during the rearriagnment, to respond untruthfully to the Court's questions.[53]

Craft's testimony at the evidentiary hearing also addressed the affidavit, which, again, states, "I, John H. Craft, have reviewed the foregoing memorandum, and agree with its contents.  If called to testify, I would testify consistently with the statements contained in the memorandum."[54]  Craft testified that the signature on the affidavit is his own, but that he has no recollection of signing it.[55]  He also testified that he does not know what the "foregoing memorandum" refers to, but that he reviewed the referenced memorandum before the evidentiary hearing, and does not agree with its conclusions regarding his legal representation of White. [56]  Far from "testify[ing] consistently with the statements contained in the memorandum," Craft maintained that his recommendation that White plead

---

[51]    *Id.*
[52]    *Id.*
[53]    *Id.*
[54]    R. Doc. 649-7.
[55]    Evidentiary Hearing, Testimony of John Craft (Dec. 13, 2021).
[56]    *Id.*

guilty was in White's best interest, and that Craft provided the best representation that he could.[57]

For these reasons, the Court finds that the Craft Affidavit does not prove White's allegations regarding Craft's representation at the plea stage. The affidavit is two sentences long, and contains no substance on its own.  It merely refers to a "foregoing memorandum," whose contents—nowhere reproduced, or even summarized, in the affidavit itself—have been expressly disavowed under oath by the affidavit's signatory.  The Court finds that this document is an insufficient evidentiary basis to carry White's burden of showing that his plea counsel's performance was deficient.

Finally, as discussed more thoroughly below, the evidentiary hearing laid bare the strength of the Government's case against White, both as to his involvement in the healthcare conspiracy, and his role in falsifying documents upon receipt of the grand-jury subpoena.   In light of the Government's evidence, this Court is persuaded that, not only was Craft not deficient in advising White to plead guilty, but *indeed no competent plea counsel* would have advised White to proceed to trial on these charges.

---

[57]     *Id.*

For these reasons, White has failed to show that he satisfies the first prong of *Strickland*.  His ineffective-assistance-of-counsel claim must be denied.

## B.    Prejudice

Although White's failure to show deficient performance alone warrants a rejection of his *Strickland* claim and § 2255 motion, *see Strickland*, 466 U.S. at 697, the Court nonetheless proceeds to address the prejudice prong. As to this requirement, the Court finds that White has not shown that he suffered any prejudice resulting from counsel's performance.  Yet again, White must rebut the presumptive truth of the statements he made under oath at his rearraignment.  *See Blackledge*, 431 U.S. at 74.  At the rearraignment, the Government summarized the factual basis of the charges against White, and explained that White "assisted in the conspiracy by, among other things, coordinating the payments of patient recruiters."[58]  The Government also explained that White and others, "working together, understanding that the Government wanted certain documents relating to" its investigation of Morad's companies, "assisted in the fabrication or creation of documents in order to mislead the Government as to the role of

---

[58]    R. Doc. 533 at 27.

certain individuals and whether or not they were employed by" certain of Morad's companies.[59]  White affirmed to the Court that he read the factual basis, that he went over it with his lawyer, that he signed it, and that the statements in it were true.[60]  White's belated protestations that he is innocent of these crimes are difficult to square with this record.

And White's claims that he did not understand the charges against him similarly fall flat in light of the rearraignment record.  As part of the rearraignment, the Court thoroughly explained the elements of the offenses to which White was pleading guilty, and White affirmed that his lawyer had explained to him what the Government would have to prove to convict him.[61] Most to the point, the Court explained that, for White to be convicted of conspiracy to commit healthcare fraud, and conspiracy to falsify records in a federal investigation, the Government would have to prove at trial that White made an agreement to commit the crimes charged, and that he "knew the unlawful purpose of the agreement[s] and joined in [them] willfully, that is, with the intent to further the unlawful purpose,"[62] or to defraud the Government.[63]  The Court also specified that "[m]ere presence at the scene

---

[59]   *Id.* at 28.
[60]   *Id.* at 29.
[61]   *Id.* at 11-12.
[62]   *Id.* at 9.
[63]   *Id.* at 11.

of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other or assembled together and discussed common aims and interests does not necessarily establish proof of a conspiracy."[64]  The Court then told White that "[a] person who has no knowledge of a conspiracy but happens to act in a way that advances some purpose of the conspiracy does not thereby become a conspirator."[65]  This clear instruction by the Court essentially tracks, and therefore seriously undermines, White's post-conviction account of his conduct—that is, that he was simply conducting usual business for Mark Morad and did not think he was doing anything wrong.  After the Court's detailed explanation of the elements of the charged offenses, White affirmed that he was pleading guilty because he was, "in fact, guilty of the crimes charged."[66]  The Court finds that none of the evidence submitted by White has rebutted the presumptive truth of his statements made under oath at his rearraignment.

Furthermore, and most critically, White has fallen far short of showing that he would have pleaded not guilty and gone to trial, but for counsel's performance.  *Hill*, 474 U.S. at 59.  White testified at the evidentiary hearing

---

[64]  *Id.*
[65]  *Id.* (emphasis added).
[66]  *Id.* at 13.

that, if Craft had not "convinced" him that the backdated 1099s were falsified, he would not have pleaded guilty, and would have gone to trial.[67] The Court finds that this assertion is unworthy of belief. The evidentiary hearing made clear that the Government had a strong case against White, thereby belying his self-serving claim that he would have elected to proceed to trial.

At the evidentiary hearing, the Government introduced two employment applications signed by Demetrias Temple, dated December 1, 2009,[68] and December 14, 2012.[69] The applications purport to be for an employment position in "marketing" for one of Mark Morad's companies. The Government also introduced a property management agreement, signed and dated December 1, 2009, purporting to contract with Demetrias Temple as a property manager of Goldwell Investments,[70] one of Morad's companies. At the evidentiary hearing, White testified that he had no involvement in the creation of the employment applications, and did not see Temple fill them out. He also testified that he did not recognize the property management

---

[67]   Evidentiary Hearing, Testimony of Christopher White (Dec. 13, 2021).
[68]   R. Doc. 1109-1.
[69]   R. Doc. 1109-3.
[70]   R. Doc. 1109-2.

agreement, and otherwise broadly denied having any role in the conspiracies.[71]

But the Government called codefendant Demetrias Temple, whose testimony squarely contradicted White's assertions.  Temple testified that she and White, along with others, participated in the conspiracy to defraud Medicare.[72]  She testified that she was a patient recruiter who was paid for referring patients to Morad's companies.  She testified that White wrote her checks, and that he knew why she was being paid, because "Mark [Morad] told him."[73]  She further explained that, when Morad and codefendant Paige Okpalobi were out of the office, she would leave her referrals—consisting of a patient name and Medicare number—with White.[74]

Temple also described in detail a meeting in 2012, after Morad received a grand-jury subpoena for, *inter alia*, certain employment records for his companies.  According to Temple's testimony, she arrived at the Prytania Street office where White, Morad, and Okpalobi worked, and Okpalobi told her to fill out the employment applications as part of a strategy to conceal Temple's real job responsibilities.[75]  She initially left the "job title" fields

---

[71]    Evidentiary Hearing, Testimony of Christopher White (Dec. 13, 2021).
[72]    Evidentiary Hearing, Testimony of Demetrias Temple (Dec. 13, 2021).
[73]    *Id.*
[74]    *Id.*
[75]    *Id.*

blank.  She then took the applications into a larger room, where she, Morad,

Okpalobi, and White discussed how to respond to the federal investigation,

and ensure they would all have "the same story" for the government.[76]  The

group decided that Temple would be in "marketing" for Memorial Home

Health, one of Morad's companies, and she filled out the applications

accordingly.[77]  Temple testified that White was in the room when she filled

out the "job title" fields, and that he knew that she was filling out the

applications in response to the federal investigation.[78]  Temple further

explained that the group needed to devise a job for her that could explain

large checks she received from 2009 to 2012, and that White came up with

the idea to make Temple the property manager of Goldwell, because the

checks were from Goldwell.[79]  Temple said that White "would take care" of

the 1099s pursuant to that strategy.[80]  She testified that she filled out the

Goldwell property management agreement at the meeting.[81]  Temple

repeated several times that White was at this meeting and part of these

---

[76]   *Id.*
[77]   *Id.*
[78]   *Id.*
[79]   *Id.*
[80]   *Id.*
[81]   *Id.*

discussions, and she correctly identified White as an attendee of the evidentiary hearing.[82]

In light of the compelling evidence against him, the Court finds that White has not shown that, even if Craft's plea performance were somehow deficient, he would have insisted on proceeding to trial.  Accordingly, White has not satisfied *Strickland*'s prejudice prong.  *See Armstead*, 37 F.3d at 210 (finding that, "in light of the strong evidence against him," the petitioner had not shown "a reasonable probability that he would not have plead[ed] guilty"); *Young v. Spinner*, 873 F.3d 282, 287 (5th Cir. 2017) (finding that "the evidence against [the petitioner]  . . . made his acquittal, and ability to show prejudice," resulting from allegedly deficient plea counsel, "exceedingly unlikely"); *cf. Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016) (finding that petitioner had not shown prejudice "in light of the overwhelming evidence of his guilt"); *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002) (finding that, despite that counsel's trial performance was deficient, "there was little prejudice to [the petitioner] in view of the strong evidence against him"); *Hoover v. Davis*, No. 19-905, 2020 WL 1430498, at *9 (S.D. Tex. Mar. 23, 2020), *certificate of appealability denied sub nom. Hoover v. Lumpkin*, No. 20-20211, 2021 WL 1582844 (5th Cir. Jan. 4, 2021) ("Given the strong

---

[82]    *Id.*

evidence of [petitioner]'s culpability . . . , he fails to demonstrate that his counsel's allegedly deficient performance caused him prejudice.").

Because White has not shown that his counsel's performance was constitutionally deficient, and because he has not shown that he suffered any prejudice arising from the alleged deficiency, the Court denies White's claim of ineffective assistance of counsel under *Strickland*, and, accordingly, his § 2255 motion.

### C.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rules Governing Section 2255 Proceedings, Rule 11(a).  A court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rules Governing Section 2255 Proceedings, Rule 11(a) (noting that § 2253(c)(2) supplies the controlling standard).   The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that)

the petition should have been resolved in a different manner or that the issues presented [are] 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

For the reasons set forth in this Order, White has not made a substantial showing of the denial of a constitutional right. The Court therefore does not issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to vacate his convictions and sentence under 28 U.S.C. § 2255. The Court does not issue a certificate of appealability.

New Orleans, Louisiana, this __22nd__ day of February, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE